1  MELINDA HAAG (CSBN 132612)
   United States Attorney
2
3  MIRANDA KANE (CSBN 150630)
   Chief, Criminal Division
4
   ARVON J. PERTEET (CSBN 242828)
5  Assistant United States Attorney

6      450 Golden Gate Avenue, 11th Floor
       San Francisco, CA 94102
7      Telephone: 415.436.6598
       Facsimile: 415.436.7234
8      Email: arvon.perteet@usdoj.gov

9  Attorneys for United States of America

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13 UNITED STATES OF AMERICA,          )      No. 12-1439 MMC
                                      )
14                 Plaintiff,         )
                                      )
15         v.                         )      STIPULATION FOR EXPEDITED
                                      )      SETTLEMENT BETWEEN PLAINTIFF
16 ONE (1) 2008 Toyota Tundra, (VIN # )      UNITED STATES OF AMERICA AND
   5TFDV58108X050994), et al.         )      UMPQUA BANK AND [PROPOSED] ORDER
17                                    )      THEREON AS REAL PROPERTY AND
                   Defendants.        )      IMPROVEMENTS LOCATED AT APNT #
18                                    )      012-690-50, LEGGETT, CA.

19

20

21      IT IS HEREBY STIPULATED  by and between plaintiff United States of America and

22 claimant UMPQUA BANK("UMPQUA"), through their respective counsel of record, that

23 UMPQUA has a valid pre-existing mortgage lien on the defendant real property described in this

24 Stipulation, which is not contested by plaintiff.

25      Plaintiff United States of America and claimant UMPQUA further stipulate that:

26      1.     Any violations of 21 U.S.C. § 881 (a)(4) and (7) involving the defendant property

27 located at 6969 Foster Creek Road, Leggett, California, 95585, Mendocino County APN # 012-

28 690-50 ("defendant property"), occurred without the knowledge and consent of UMPQUA.

2.      Plaintiff United States agrees that upon entry of a final order of forfeiture in favor of the United States, plaintiff, through the United States Marshals Service or its agent(s), shall undertake to sell the defendant real property in a commercially reasonable manner and to sell said property at a private sale for fair market value (the "Purchase Price"). The following costs and expenses of sale shall be deducted from the Purchase Price and paid directly out of escrow in the following order :

(a)      First, the costs incurred by the United States Marshals Service to the date of close of escrow, including the cost of posting, service, advertising, and maintenance;

(b)      Second, to the Mendocino County Tax Collector (for real property taxes) of all real property taxes assessed and unpaid against the defendant real property prorated to the date of entry of the final order of forfeiture;

(c) Third, the costs and expenses associated with the sale of the real property.

(d) Fourth, any county transfer taxes.

(e) Fifth, to UMPQUA as follows:

(i)  all unpaid principal due to UMPQUA under the Promissory Note dated January 15, 2003, in the original principal amount of $125,000.00, a true and correct copy of which is attached hereto as Exhibit "A" ("Note"), and which is secured by a Deed of Trust dated January 15, 2003, recorded February 24, 2003, as instrument number 2003-04636 of the Official Records of Mendocino County, California ("Deed of Trust "), a true and correct copy of which is attached hereto as Exhibit "B".

(ii)  all unpaid interest due as of the date of the closing of the sale of the defendant real property at the contractual (not default) adjustable rate under the above-referenced Note;

(iii) all fees, late charges described in the promissory note, costs, and advances, including but not limited to reasonable attorney's fees, prepayment fees, taxes and hazard insurance as provided under the terms of the Note and Deed of Trust.

STIPULATION AND [PROPOSED] ORDER AND
EXPEDITED SETTLEMENT
No. 12-1439 MMC                                   2

3.      The payment to UMPQUA shall be in full settlement and satisfaction of any and all claims by UMPQUA to the defendant property and all claims resulting from the incidents or circumstances giving rise to this lawsuit.

4.      Upon payment in full as set forth in ¶ 2(e) (i)-(iii), above, claimant UMPQUA agrees to assign and convey its security interest to the United States via recordable documents and to release the United States, and any agents, servants, and employees of the United States, (or any state or local law enforcement agency) acting in their individual or official capacities, from any and all claims by the UMPQUA and its agents which currently exist or which may arise as a result of the government's action against the property.

5.      In the event it is determined that the proceeds of a sale of defendant real property would be insufficient to pay UMPQUA in full as set forth in ¶ 2(e) (i)-(iii), above, after the disbursements described in ¶ 2 (a)-(d) hereinabove are made, the plaintiff United States agrees to release its interest in the defendant real property and consent to the exercise of UMPQUA's state law rights to foreclose upon its deed of trust which secures the obligation to UMPQUA. Plaintiff shall not enter into a binding agreement to sell the defendant real property unless the proceeds of such sale are sufficient to pay UMPQUA in full as set forth in ¶ 2(e) (i)-(iii), unless UMPQUA otherwise consents in writing.

6.      Claimant UMPQUA agrees not to pursue against the United States any other rights that it may have under the mortgage instrument, including, but not limited to, the right to initiate a foreclosure action without the consent of the United States Attorney's Office or this Court.

7.      Claimant UMPQUA agrees to notify the United States Attorney at the end of the first payment cycle in which a payment in not made under the terms specified in the security instrument and promissory note. Claimant further agrees to join any government motions for interlocutory or stipulated sale of the defendant property if the proceeds of such sale will be sufficient to pay UMPQUA in full as set forth in ¶ 2(e) (i)-(iii), and any motions to remove occupants from the property for nonpayment of mortgage or rent, destruction of property, or

STIPULATION AND [PROPOSED] ORDER AND
EXPEDITED SETTLEMENT
No. 12-1439 MMC                          3

1   other just cause.

2       8.      Claimant UMPQUA understands and agrees that by entering into this stipulation

3   of its interests in the defendant real property, it waives any rights to further litigate against the

4   United States and its interest in the defendant property  and to petition for remission or mitigation

5   of the forfeiture.  Unless otherwise provided by this Stipulation or specifically directed by order

6   of this Court, UMPQUA is hereby excused and relieved from further participation in this action.

7       9.      UMPQUA understands and agrees that the United States reserves the right to void

8   the expedited settlement agreement if, before payments of the mortgage or lien, the U.S. Attorney

9   obtains new information indicating that the mortgage or lienholder is not an "innocent owner: or

10  "bona fide purchaser" pursuant to applicable forfeiture statutes.  The U.S. Attorney also reserves

11  the right, in its discretion, to terminate the forfeiture at any time and release the subject property.

12  In either event, the United States shall promptly notify the mortgagee or lienholder of such

13  action.  A discretionary termination of forfeiture shall not be a basis for any award of fees under

14  28 U.S.C. § 2465.

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

STIPULATION AND [PROPOSED] ORDER AND
EXPEDITED SETTLEMENT
No. 12-1439 MMC                    4

10.     The parties agree to execute further documents, to the extent necessary, to convey clear title to the defendant real property to the United States and to further implement the terms of this stipulation.

11.     The terms of this Stipulation are contingent upon forfeiture of the defendant real property to the United States and the Court's entry of a final judgment of forfeiture.

Dated: December 4, 2012

MELINDA HAAG
United States Attorney

By _____
ARVON J. PERTEET
Assistant United States Attorney
Attorney for Plaintiff

Dated: December 3, 2012

By _____
PAUL J. DUTRA
Dutra & Gates
Attorneys for Claimant
UMPQUA BANK

Dated: December 3, 2012

By _____
THERESA SIVELLE
Vice President
UMPQUA BANK
Claimant

ORDER

SO ORDERED this 6 day of December , 2012

_____
MAXINE M. CHESNEY
UNITED STATES DISTRICT JUDGE

STIPULATION AND [PROPOSED] ORDER AND
EXPEDITED SETTLEMENT
No. 12-1439 MMC                          5

**EXHIBIT A**

# D..COUNT RATE—JUMBO ELO

| | | | | | | |
|---|---|---|---|---|---|---|

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  Duanne Graves
Matthew D. Graves
6689 Foster Creek Rd
Leggett, CA 95585

**Lender:**  Humboldt Bank
Garberville
P.O. Box 1007
Attn:Loan Support
Eureka, CA 95502

## CREDIT LIMIT: $125,000.00                    DATE OF AGREEMENT: January 15, 2003

**Introduction.** This Discount Rate—Jumbo ELOC ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Humboldt Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," "Beneficiary," and "Lender" mean Humboldt Bank. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Humboldt Bank, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the Deed of Trust which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue as follows: The Credit Line will mature 10 years from the date of the Credit Agreement. All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable at the end of this term. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of California, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: Ten years. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you will not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment.

In any event, if your Credit Line balance falls below $50.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to unpaid principal; then to late charges and other charges; and then to any amounts that exceed your Credit Limit.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at this address prior to 5.00 PM Pacific Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of One Hundred Twenty-five Thousand & 00/100 Dollars ($125,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

  **Credit Line Checks.** Writing a preprinted "Credit Line Checks" that we will supply to you.

  **Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

**DISCOUNT RATE—JUMBO ELOC**

**Loan No: 0800020201**

(Continued)

**Page 2**

**Requests By Mail.** Requesting an advance by mail.

**Requests In Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Credit Line Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Credit Line Checks.

**Post-dated Checks.** Your Credit Line Checks is post-dated. If a post-dated Credit Line Checks is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Credit Line Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Credit Line Checks is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line Checks.

**Transaction Violation.** Your Credit Line Checks is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Credit Line Checks.

If we pay any Credit Line Checks under these conditions, you must repay us, subject to applicable laws, for the amount of the Credit Line Checks. The Credit Line Checks itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Credit Line Checks along with your periodic billing statements; however, your use of each Credit Line Checks will be reflected on your periodic statement as a credit advance. We do not "certify" our Credit Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Credit Line Checks, Telephone Request, Request By Mail and In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Credit Line Checks, requesting an advance by telephone, requesting an advance by mail and requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $500.00. This means any Credit Line Checks must be written for at least the minimum advance amount.

**Authorized Signers.** The words "Authorized Signer" on Credit Line Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Credit Line Checks.** If you lose your Credit Line Checks or if someone is using them without your permission, you agree to let us know immediately. You can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated January 15, 2003, to a trustee in favor of us on real property located in Mendocino County, State of California. That agreement contains the following due on sale provision: We may, at our option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without our prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by us if such exercise is prohibited by applicable law.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us the "daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

**Additional Finance Charges.** The following additional FINANCE CHARGES will be charged to your Credit Line or paid in cash:

| | | |
|---|---|---|
| Flood and Tax Service: | In Cash | $39.50 |

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL

## DISCOUNT RATE–JUMBO ELOC
### (Continued)

Loan No: 0800020201                                                                                              Page 3

PERCENTAGE RATE as follows. Initially, we will apply the discounted rates shown herein. Thereafter, we start with an independent index which is the PRIME RATE AS PUBLISHED IN THE WESTERN EDITION OF THE WALL STREET JOURNAL PUBLICATION (the "index"). We will use the most recent index value available to us as of the same date as the rate change date any ANNUAL PERCENTAGE RATE adjustment. The index is not necessarily the lowest rate charged by us on our loans. If the index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index, which is beyond our control, after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the index will take effect Monthly. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 0.500 percentage points. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the lesser of 9.750% or the maximum rate allowed by applicable law. Today the index is 4.250% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

### Rates During the Discount Period

| Term of Discount Range of Balances | Discounted Rate | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| First 6 payments | | | |
| All Balances | 4.590 % | 4.590 % | 0.01258 % |

The term of the discount period is 6 payments.

The discount period will be for six (6) months from the date of the Credit Agreement.

### Current Non–discounted Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.500% | 4.750% | 0.01301% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Returned Items.** You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $10.00 when you request a stop payment on your account.

**Overlimit Charge.** Your Credit Line Account may be charged $12.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a Credit Line Checks in excess of your available balance.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account $1.00 per copy for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Late Charge.** Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you $5.00.

**Security Interest Charges.** You agree to pay all security interest charges related to your Credit Line as set forth below:

| | |
|---|---|
| ALTA policy | $497.00 |
| Inspection Fee | $50.00 |
| Recording (est) | $80.00 |
| Escrow | $221.60 |
| Wire | $20.00 |
| Courier Fee | $20.00 |
| Total | $898.60 |

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (A) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (B) You do not meet the repayment terms of this Credit Agreement. (C) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1)  The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2)  We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

## DISCOUNT RATE—JUMBO ELOC
### (Continued)

| Loan No: 0600020201 | | Page 4 |
|---|---|---|

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the index is no longer available, we will choose a new index and margin. The new index will have an historical movement substantially similar to the original index, and the new index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. You also will pay any court costs, in addition to all other sums provided by law.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable ANNUAL PERCENTAGE RATE under this Agreement to 4.000 percentage points over the then applicable ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE will not exceed the maximum rate permitted by applicable law. If we do not increase the ANNUAL PERCENTAGE RATE upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Credit Line Checks and any other access devices. Any use of Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Credit Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Credit Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Humboldt Bank, Attn: Loan Support, P.O. Box 1007 Eureka, CA 95502.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Humboldt Bank P.O. Box 1007 Eureka, CA 95502

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of California. This Agreement has been accepted by us in the State of California.

**Choice of Venue.** If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of Humboldt County, State of California.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You

## DISCOUNT RATE–JUMBO ELOC
### (Continued)

Loan No: 0800020201                                                              Page 5

agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

**BORROWER:**

X _____        X _____
Duanne Graves, Individually                Matthew D. Graves, Individually

Effective Disbursement Date: _____

| | DISCOUNT RATE–JUMBO ELOC | |
|---|---|---|
| Loan No: 0800020201 | (Continued) | Page 6 |

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

> Humboldt Bank
> Attn: Loan Support
> P.O. Box 1007
> Eureka, CA 95502

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and account number.

> The dollar amount of the suspected error.

> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LASER PRO Lending, Ver. 5.20.00.010  Copr. Harland Financial Solutions, Inc. 1997, 2003.  All Rights Reserved.  – CA  ASCFILEPL0915PE  TR–4325  PR–20

**EXHIBIT B**

2003-04838
Page: 1 of 10

**RECORDATION REQUESTED BY:**
Humboldt Bank
Garberville
P.O. Box 1007
Attn:Loan Support
Eureka, CA 95502

**WHEN RECORDED MAIL TO:**
Humboldt Bank
Garberville
P.O. Box 1007
Attn:Loan Support
Eureka, CA 95502

**SEND TAX NOTICES TO:**
Humboldt Bank
Garberville
P.O. Box 1007
Attn:Loan Support
Eureka, CA 95502

2003-04636
Recorded at the request of
REDWOOD EMPIRE TITLE
02/24/2003 10:20A
Fee: 34.00 No of Pages: 10

OFFICIAL RECORDS
Mendocino County, CA
Marsha A Wharff, Clerk-Recorder

**FOR RECORDER'S USE ONLY**

# DEED OF TRUST

### Variable Interest Rate
### Revolving Line of Credit

**THIS DEED OF TRUST** is dated January 15, 2003, among Duanne Graves, a married woman as her sole and separate property, ("Trustor"); Humboldt Bank, whose address is Garberville, P.O. Box 1007, Attn:Loan Support, Eureka, CA 95502 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Redwood Empire Title Co of Mendocino County, whose address is 375 Gobbi Street, Ukiah, CA 95482 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Mendocino County, State of California:

See Legal Description, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 6969 Foster Creek Rd, Leggett, CA 95585. The Assessor's Parcel Number for the Real Property is 012-690-50

**REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the indebtedness definition, and without limitation, this Deed of Trust secures a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures the total amount of the Credit Agreement. The unpaid balance of the revolving line of credit under the Credit Agreement may at certain times be Zero Dollars ($0.00). A zero balance does not affect Lender's agreement to make advances to Borrower under the Credit Agreement. Therefore, Lender's interest under this Deed of Trust will remain in full force and effect notwithstanding a zero balance on the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Deed of Trust and any intermediate balance.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**TRUSTOR'S REPRESENTATIONS AND WARRANTIES.** Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c)

**DEED OF TRUST**
**(Continued)**

Loan No: 0800020201                                                                                          Page 2

---

the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

**TRUSTOR'S WAIVERS.** Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall strictly perform all their respective obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

   **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

   **Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

   **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor.

**DEED OF TRUST**
**(Continued)**

The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale" or "transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialman's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. .

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or

**DEED OF TRUST**
(Continued)

Loan No: 0800020201                                                                                      Page 4

---

replacement exceeds $500.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Promises. All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

| Loan No: 0800020201 | **DEED OF TRUST**<br>**(Continued)** | Page 5 |
| --- | --- | --- |

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Trustor will be in default under this Deed of Trust if any of the following happen: (A) Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Borrower's or Trustor's income, assets, liabilities, or any other aspects of Borrower's or Trustor's financial condition. (B) Borrower does not meet the repayment terms of the Credit Agreement. (C) Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Credit Agreement, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

# DEED OF TRUST
## (Continued)

Loan No: 0800020201                                                                                                Page 6

---

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Mendocino County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or

**DEED OF TRUST**
**(Continued)**

Loan No: 0800020201                                                                          Page 7

required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by and interpreted in accordance with federal law and the laws of the State of California. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Humboldt County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Humboldt Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Duanne Graves and Matthew D. Graves, and all other persons and entities signing the Credit Agreement.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated January 15, 2003, with credit limit of $125,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**DEED OF TRUST**
**(Continued)**

Loan No: 0800020201                                                                                      Page 8

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Humboldt Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Redwood Empire Title Co of Mendocino County, whose address is 376 Gobbi Street, Ukiah, CA 95482 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Duanne Graves.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE CREDIT AGREEMENT SECURED BY THIS DEED OF TRUST.

**TRUSTOR:**

X _Duanne Graves_
Duanne Graves, Individually

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_                                       )
                                                           ) SS
COUNTY OF _Humboldt_                                        )

On _February 6th_ — 20 _03_ before me, _Traci D. Speelman - Notary Public_
personally appeared Duanne Graves, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Traci D. Speelman_

TRACI D. SPEELMAN
Commission # 1365529
Notary Public - California
Humboldt County
My Comm. Expires Jul 20, 2006
(Seal)

Loan No: 0800020201

### DEED OF TRUST
### (Continued)

Page 9

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____     Beneficiary: _____

                                     By: _____

                                     Its: _____

LASER PRO Lending, Ver. 5.26.00.010  Copr. Harland Financial Solutions, Inc. 1997, 2002  All Rights Reserved.  - CA  J12134,PL\GE01FE  TR-4125  PR-29

Our No.: 00199707-SD

# LEGAL DESCRIPTION

The land referred to herein is described as follows:

All that certain real property situate, lying and being in the unincorporated area, County of Mendocino, State of California, more particularly described as follows:

PARCEL ONE:

The North half of the Northwest quarter of Section 15, Township 23 North, Range 16 West, Mount Diablo Base and Meridian.

12-690-50

PARCEL TWO:

A NON-EXCLUSIVE EASEMENT for ingress, egress and public utilities, as an appurtenance to Parcel One above or any portion thereof, over the strips of land 60 feet in width lying 30 feet on each side of the centerline of the existing roads that run through the South half of Northwest quarter and North half of Southwest quarter of Section 15, Township 23 North, Range 16 West, Mount Diablo Base and Meridian.

PARCEL THREE:

THE EASEMENT granted in the deed executed by Elizabeth Ann Burrow to Dennis A. Myers, dated June 15, 1973 in Volume 928 of Official Records, Page 732, Mendocino County Records, as follows:

An easement and right of way over the existing main road that goes through Section 7, Township 23 North, Range 15 West, Mount Diablo Base and Meridian, and through Sections 11 and 10 of Township 23 North, Range 16 West, Mount Diablo Base and Meridian, for the purposes of furnishing ingress and egress from and to properties now owned by the Grantees herein.

ALSO GRANTING unto the Grantee herein, her heirs, successors and assigns an easement and right of way over the existing main road that runs through Section 19, Township 23 North, Range 15 West, and Sections 23 and 22 of Township 23 North, Range 16 West, Mount Diablo Base and Meridian, for the purpose of furnishing ingress to and egress from and to property now owned by the grantee herein.

PARCEL FOUR:

THE EASEMENT granted in the deed executed by Norbert J. and Terry J. Osterholt et al to Dennis A. Myers, dated November 25, 1975, recorded December 26, 1975 in Volume 1023 of Official Records, Page 409, Mendocino County Records, as follows:

A 60 foot wide easement and right of way over the existing road that runs through Section 19, Township 23 North, Range 15 West, and Sections 23 and 22, Township 23 North, Range 16 West, Mount Diablo Base and Meridian, for the purpose of ingress and egress to and from property owned by the Grantee herein.

This easement and right of way also includes that portion of road that runs through Section 15, on the East side of Foster Creek in Township 23 North, Range 16 West, Mount Diablo Base and Meridian.